UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SCHMITT, | | * |
| | | * |
| | Petitioner, | * |
| | | * |
| | v. | * |
| | | *   Civil Action No. 23-cv-13203-ADB |
| BOWERS, | | * |
| | Respondent. | * |
| | | * |
| | | * |
| | | * |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Petitioner Thomas Schmitt ("Schmitt"), who is currently incarcerated, has filed a writ of

habeas corpus pursuant to 28 U.S.C. § 2241, in which he seeks a reduction of his sentence

pursuant to the First Step Act ("FSA"). See generally [ECF No. 1 ("Petition")]. The

government opposes the Petition. [ECF No. 8]. For the reasons set forth below, the petition is

DENIED.

I.       **LEGAL STANDARD OF REVIEW**

The Court reviews "a motion to dismiss a habeas petition according to the same

principles as a motion to dismiss a civil complaint under Federal Rule of Civil Procedure

12(b)(6)."[1]  Walsh v. Boncher, 652 F. Supp. 3d 161, 164 (D. Mass. 2023) (quoting Cardoza v.

Pullen, 22-cv-00591, 2022 WL 3212408, at *3 (D. Conn. Aug. 9, 2022)). To survive a motion to

dismiss under the Rule 12(b)(6) standard, the complaint must "contain enough factual material to

---

[1] Although Respondent does not explicitly move to dismiss under Federal Rule 12(b)(6), it acknowledges that it makes an analogous argument, and thus the Court considers it as a motion to dismiss and reviews it under that standard. [ECF No. 8 ("Answer") at 1 n.1].

raise a right to relief above the speculative level . . . and state a facially plausible legal claim."

Smith v. Spaulding, No. 19-cv-10112, 2019 WL 6699455, at *2 (D. Mass. Dec. 9, 2019)

(alteration in original) (quoting Guerra-Delgado v. Popular, Inc., 774 F.3d 776, 780 (1st Cir.

2014)).  "[T]he Court must accept as true all well-pleaded facts, analyze those facts in the light

most favorable to the plaintiff, and draw all reasonable factual inferences in [the plaintiff's]

favor."  Levine v. U.S. Dep't of Fed. Bureau of Prisons, No. 20-cv-11833, 2021 WL 681689, at

*2 (D. Mass. Feb. 22, 2021) (citing Gilbert v. City of Chicopee, 915 F.3d 74, 80 (1st Cir. 2019)).

In addition, when considering the dismissal of a pro se complaint for failure to state a

claim, the Court "will liberally construe[] his complaint, however inartfully pleaded."  Smith,

2019 WL 6699455, at *2 (internal quotations omitted) (quoting Facey v. Dickhaut, 892 F. Supp.

2d 347, 351 (D. Mass. 2012)).  "However, pro se status does not insulate a party from complying

with procedural and substantive law."  Id. (quoting Facey, 892 F. Supp. 2d at 351) (emphasis

removed).

"Ordinarily, a court will not consider documents outside of the pleadings in a motion to

dismiss."  Smith, 2019 WL 6699455, at *2 (quoting Facey, 892 F. Supp. 2d at 351).  Instead, the

Court "may consider the allegations in the petition, the documents attached to, or expressly

incorporated into, the petition, and relevant public records."  Id.; see also Foley v. Wells Fargo

Bank, N.A., 772 F.3d 63, 74 (1st Cir. 2014).  The Court may sometimes consider other

documents, but this is a "narrow exception," Smith, 2019 WL 6699455 at *2 (citing Foley, 772

F.3d at 74), that "only covers documents the authenticity of which are not disputed by the

parties, that are central to the petitioner's claims, or that are sufficiently referred to in the

petition," id. (citing Foley, 772 F.3d at 74).  The authenticity of the following documents, which

are attached to Respondent's answer, has not been disputed and they are sufficiently central to

Petitioner Schmitt's claims for the Court to consider them in resolving this motion: the

declaration of Federal Bureau of Prisons ("BOP") staff member Gallant, [ECF No. 8-1];

Schmitt's judgment and commitment, [ECF No. 8-2]; Schmitt's admission release history, [ECF

No. 8-3]; Schmitt's sentence monitoring computation, [ECF No. 8-4]; Respondent's FSA policy

[ECF No. 8-5]; Schmitt's FSA assessment sheet, [ECF No. 8-8]; and Schmitt's "Measures of

Criminal Attitudes and Associates" (MCAA) test responses, [ECF No. 8-9].

## II.      BACKGROUND

### A.      The FSA

Under the FSA, eligible inmates are allowed to earn time credits "towards pre-release

custody or early transfer to supervised release for successfully completing approved Evidence-

Based Recidivism Reduction programs or Productive Activities."  Nygren v. Boncher, 578 F.

Supp. 3d 146, 149 (D. Mass. 2021) (citing FSA Time Credits, 85 Fed. Reg. 75268 (Nov. 25,

2020)).  Under 18 U.S.C. § 3632(d)(4)(A), an eligible inmate "who successfully completes

evidence-based recidivism reduction programming or productive activities, shall earn time

credits" of ten or fifteen days "for every 30 days of successful participation."  18 U.S.C.

§ 3632(d)(4)(A).  An inmate is eligible so long as, among other things, the offense is not one of

those specifically excluded by the FSA.  Id. § 3632(d)(4)(D).

In implementing the FSA, the BOP has developed a series of tools "to assess an inmate's

risk of recidivism and criminogenic needs." [ECF No. 8-1 ¶ 9].  These tools are used to create a

"PATTERN risk score which measures . . . 'the likelihood that a person in federal prison will

reoffend upon release.'"  Walsh, 652 F. Supp. 3d at 163 (quoting United States v. DeCaro, No.

96-cr-00005, 2022 WL 4395905, at *1 n.1 (E.D. Mo. Aug. 23, 2022), aff'd, No. 22-3004, 2022

WL 19702639 (8th Cir. Nov. 29, 2022)).  The determination of an inmate's risk of re-offense is a

statutorily required (and critical) part of FSA's scheme.  18 U.S.C. § 3632(a).  The BOP uses

these assessments to determine what programming is appropriate for the prisoner.  Id.

§ 3632(a)(3); see also [ECF No. 8-5].

As part of the risk assessment process, inmates are asked to complete the Standardized

Prisoner Assessment for Reduction in Criminality ("SPARC-13"), which "identifies thirteen

needs areas which are dynamic factors that can be targeted to reduce an inmate's risk of

recidivism."  [ECF 8-1 ¶ 9].  Four of those areas, "Anger/Hostility, Antisocial Peers, Cognitions,

and Family/Parenting," require the inmate to complete assessment tools.  [Id. ¶ 15].  In total,

inmates are expected to complete the "Brief Anger-Aggression Questionnaire," the "Family

Assessment Device," and both parts of the two-part MCAA test.  [Id.].  Inmates who fail to

complete any one of these four tasks are considered to be "opting out."  [ECF No. 8-5 at 9, 12].

Here, the parties do not dispute that Schmitt is eligible for FSA credits, but do dispute

whether and how those credits have accrued for him since he began his sentence.  See [Answer at

5].

**B.     Background Facts**

On April 13, 2023, the United States District Court for the Northern District of Ohio

sentenced Schmitt to an eighteen-month term of imprisonment with a three-year term of

supervised release for Conspiracy to Distribute and Possess with Intent to Distribute a Controlled

Substance, in violation of 21 U.S.C. § 846.  [ECF No. 8-2 at 2–3].

Schmitt was initially incarcerated at the Federal Medical Center in Devens,

Massachusetts.  [ECF No. 8-3].  His sentencing computation began on May 23, 2023, which is

the date he self-surrendered to the institution.  [ECF No. 8-1 ¶ 6; ECF No. 8-4 at 2].

On June 12, 2023, Schmitt had an initial classification meeting with BOP staff member Heather Gallant.  [ECF 8-1 ¶19].  At that meeting, he was informed that he needed to complete the assessments described above to begin to earn FSA credits.  [Petition at 1; ECF 8-1 ¶ 19].

That same day, he logged into the computer system and completed the Brief Anger-Aggression Questionnaire and the Family Assessment Device.  [ECF 8-1 ¶ 20; ECF 8-8 at 1].  The following day, June 13, 2023, he began taking the MCAA.  [ECF 8-1 ¶ 21; ECF 8-8 at 1].  He completed Part A, but only answered twenty-six of the forty-six questions in Part B of the MCAA.  [ECF No. 8-9].  As such, "the test was deemed incomplete" and Schmitt was placed in "'opt-out' status."  [ECF No. 8-1 ¶¶ 21, 23].

Subsequently, by September 15, 2023, Schmitt completed the MCAA survey and has been earning FSA credits ever since.  [ECF 8-1 ¶ 23; ECF 8-8 at 1].

On December 26, 2023, after learning that he had not earned FSA credits between May 23, 2023, and September 15, 2023, from his "next assessment printout," [Petition at 1], Schmitt filed the instant petition for habeas corpus pursuant to 28 U.S.C. § 2241, [id.].  Respondent filed an answer on January 18, 2024.  [Answer].

While the Petition was pending, on January 17, 2024, Schmitt was transferred to the Federal Correctional Institution in Butner, North Carolina.  [ECF No. 8-3].

III.     DISCUSSION

As explained above, Schmitt did not accrue FSA credits from May 23, 2023, the date of his self-surrender, until September 15, 2023, the date he completed the final assessment required to qualify for FSA credits.  [ECF No. 8-1 ¶ 23].  Schmitt now complains of not being awarded credits during that time, which would have accelerated his release date.  [Petition at 1].

Although Schmitt began taking the four required assessment tools on June 12, 2023, he did not complete them until September.  [ECF No. 8-1 ¶¶ 20–23; ECF No. 8-8].  Specifically, he did not complete Part B of the MCAA, which the BOP considers necessary to determine his needs in the area of Cognitions.  [ECF No. 8-1 ¶ 16].  As he did not complete the required FSA MCAA survey, the BOP, in keeping with applicable law and BOP policy, placed him in "opt-out" status until they were able to determine that he had no needs in the area of Cognitions, which they did on September 15, 2023, following his completion of the MCAA.  [Id. ¶ 23].  Accordingly, the BOP correctly excluded the time between May 23, 2023, and September 15, 2023, and this Court cannot provide the relief he seeks.[2]  His recourse remains with the Warden of the institution where he is currently housed.

## IV.      CONCLUSION

Accordingly, for the reasons set forth above, the petition, [ECF No. 1], is DISMISSED.

**SO ORDERED.**

April 9, 2024                                                        */s/ Allison D. Burroughs*
                                                                     ALLISON D. BURROUGHS
                                                                     U.S. DISTRICT JUDGE

---

[2] Respondent argues that this Court does not have jurisdiction over the Petition because Schmitt has been transferred outside of the District of Massachusetts.  [Answer at 6].  At least one other session of this court has found that the Court may continue to exercise jurisdiction over a petition that was filed, as here, prior to an inmate's transfer to another district.  Yancey v. Warden, No. 22-cv-11790, 2023 WL 4409852, at *2 (D. Mass. July 7, 2023).  "Although the First Circuit has not yet addressed this issue, nine other circuit courts have [addressed this issue], and all have concluded . . . that a prisoner's transfer after a district court's jurisdiction attaches does not defeat jurisdiction over a habeas corpus petitioner as long as there remains in the district a respondent who can effectuate any court order."  Id. (internal citations omitted); see also id. at *3 (finding that "the BOP continues to operate within the district, meaning there remains an official within the district who may carry out any order the court may issue").

Moreover, because the Court finds Petitioner is not entitled to the relief he seeks, it does not address whether he failed to exhaust his administrative remedies.